UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:08-CR-58 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| PATRICK PARKS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Defendant Patrick Parks ("Defendant") filed a motion to suppress evidence resulting from

his arrest on June 15, 2007 (Court File No. 44), and also filed a supplement to this motion (Court

File No. 48). This motion was referred to United States Magistrate Judge William B. Carter, who

held an evidentiary hearing on August 21, 2009. Defendant subsequently filed a motion for

consideration of an additional argument (Court File No. 58) to which the government responded

(Court File No. 60). The magistrate judge issued a report & recommendation ("R&R") pursuant

to 28 U.S.C. § 636(b)(1) recommending Defendant's motion be denied (Court File No. 62).

Defendant filed objections to the R&R within the required ten days, disputing the magistrate

judge's credibility determination and the application of the plain view doctrine (Court File No. 63).

After carefully reviewing the record, including the relevant portions of the transcript of the

evidentiary hearing held before the magistrate judge, and after considering both the filings of

Defendant and the United States ("Government") (Court File Nos. 44, 48, 50, 51, 58, 60, 63, 64),

the Court finds the magistrate judge's factual findings to be supported by the weight of the evidence

and his legal analysis to be correct under the relevant law. For the following reasons, the Court will

**ACCEPT** and **ADOPT** the R&R (Court File No. 62). Accordingly, Defendant's motion to suppress

and supplemental motions will be **DENIED** (Court File Nos. 44, 48, 58, 63).

### I.   RELEVANT FACTS

None of the parties challenges the magistrate judge's account of the testimony and evidence presented at the hearing, which the Court hereby adopts by reference (Court File No. 62, pp. 1-8). The Court will only set forth the facts necessary to this Memorandum.  On June 11, 2007, Task Force Director Tim Lane ("Lane") obtained a search warrant for Defendant's home based on a confidential informant's purchase of cocaine base from Defendant on June 8, 2007.  An arrest warrant dated June 15, 2007 was signed by Elinor Foster ("Foster"), Circuit Court Clerk of Marshall County, Tennessee, and also by Bill Ostermann ("Ostermann"), a deputy with the Marshall County Sheriff's Department assigned to the Seventeenth Judicial Drug Task Force at the time.

After obtaining information that Defendant routinely left his residence to sell crack cocaine out of a motel in Shelbyville on the weekends, Lane instructed Ostermann to obtain an arrest warrant from Marshall County so they could stop Parks on his way to Shelbyville (Court File No. 65, ("Transcript") pp. 33-34).  Lane was engaged in surveillance of Defendant's residence while Ostermann went to obtain the arrest warrant (*id*. p. 35).  Foster testified at the suppression hearing, she issued the warrant from her home some time between  4:00 p.m. and 6:00 p.m. on Friday, June 15, 2007 (*id*. pp. 9-10). This was corroborated by Ostermann's testimony regarding the warrant (*id*. pp. 34-35).  After the arrest warrant was obtained, Ostermann waited in a location where he could follow Defendant once he left his residence.

While following Defendant to Shelbyville, Lane and Ostermann decided to radio ahead to Shelbyville City and Bedford County Sheriff's Department officers to get assistance for the stop,

2

warning the officers Defendant was frequently armed with a pistol (*id*. p. 38). Upon arriving in Shelbyville, Defendant pulled into a Kangaroo Market parking lot where marked police units were waiting for Defendant to pass by so they could follow him. As soon as Defendant pulled into the parking lot, he was approached by law enforcement. Within seconds, deputies approached the passenger side of Defendant's vehicle on foot. These deputies announced they could see a firearm laying in the front seat of the vehicle (*id*. p. 41). Ostermann parked on the driver's side and he approached Defendant's vehicle on foot from this side. A Bedford County deputy reached into the open passenger's side window and retrieved the gun.

Ostermann informed Defendant he was under arrest and that he had a warrant for his arrest. Defendant was arrested on June 15, 2007, in a parking lot in Bedford County, pursuant to an arrest warrant and was found with a .45 caliber handgun on the front seat of the vehicle and 11.5 grams of cocaine base in his pocket. After being advised of and waiving his *Miranda* rights, Defendant gave a statement to law enforcement, admitting possession of the firearm and possession with intent to distribute cocaine base. Per Ostermann's testimony, Defendant was served with a copy of the warrant and Ostermann gave the original to the dispatcher of the Marshall County's Sheriff's Department, indicating a hold needed to be placed on Defendant because he was incarcerated in Bedford County (*id.* pp. 43-44, 53-54).

Some time after Defendant's arrest and incarceration, Defendant's mother or grandmother contacted Foster inquiring about an arrest warrant for June 2007. Foster could not find it in the system and sent a letter dated November 19, 2007, indicating there was no record of a warrant since 2000 (November 2007 Letter, Court File No. 45-1, Ex. C). Foster later received a letter from Defendant on March 1, 2008, and upon further research, located the outstanding warrant from June

3

15, 2007. Foster explained this in a letter to Defendant dated March 6, 2008, and indicated the warrant was returned to the Marshall County Sheriff's Department and held there (March 2008 Letter, Court File no. 45-1, Ex. E). Defendant was subsequently set for an initial appearance in April 2008. At the initial appearance, Lane testified he had the arrest warrant at the time of the arrest on June 15, 2007, but did not have it on him during the hearing as it was "in the possession of the Marshall County Sheriff's Department" (Prelim. Hearing Trans., Court File No. 45-1, Ex. B, p. 6).

Defendant retained a private investigator, Trey Aycock ("Aycock"), who interviewed Foster in June 2009. Aycock questioned Foster about the issuance of the June 15, 2007, warrant. Aycock testified Foster did not recall any specifics surrounding the issuance of the warrant, but did not deny the signature was, in fact, hers (Transcript, pp. 26-27).

## II.    STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made, 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment. *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D. Del. 1984); *see also United States v. Brown*, No. 1:07-CR-9, 2007 WL 1345463, *1 (E.D. Tenn. May 7, 2007). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting

4

him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III.   <u>DISCUSSION</u>

Defendant moves to suppress the evidence obtained pursuant to his arrest on June 15, 2007. Defendant contends a valid arrest warrant was not in existence at the time he was arrested. Further, he argues the plain sight doctrine would not apply to the facts in his case. The Shelbyville City and Bedford County Sheriff's Department officers  may have seen Defendant's firearm, but if they did not have knowledge Defendant was a convicted felon, Defendant contends there would be no probable cause to arrest him.

### A.     **Credibility of Witnesses**

Defendant argues there was no arrest warrant issued at the time he was arrested on June 15, 2007. The warrant is signed and dated June 15, 2007, with confirmed signatures by both Foster and Ostermann. The warrant was also signed by Deputy Melvin Neely with a date set for an appearance on July 31, 2007. According to Foster, this date, about four to six weeks from the date of the warrant, on a Tuesday, is consistent with standard procedure (Transcript pp. 20-21). Other than from the contents of the document, the actual timing of the issuance of this warrant hinges on the testimony of Foster and Ostermann from the suppression hearing. Defendant also introduced into evidence the transcript of Lane's testimony from the preliminary hearing. Defendant contends Foster's and Ostermann's testimony at the suppression hearing lacked credibility based on

5

inconsistencies with other evidence in the record. The magistrate credited the witnesses' testimony, finding "each person's testimony was consistent with one another that Ostermann went to Ms. Foster's house on the late afternoon of June 15, 2007, and obtained a warrant for the defendant's arrest" (R & R, p. 9).

Higher courts are "generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor." *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001), *accord United States v. Bailey*, 302 F.3d 652, 657 (6th Cir. 2002). The magistrate analyzed inconsistencies in the testimony and provided a well-reasoned explanation for why he found the witnesses to be credible. Defendant's arguments against finding the witnesses credible fail to "persuasively undermine the magistrate judge's reasoning, let alone create a definite and firm conviction that a mistake was made." *United States v. Craig*, 198 F. App'x 459, 464 (6th Cir. 2006).

### 1. Credibility of Foster's Testimony

At the hearing, Foster testified she regularly issued warrants between the hours of 8:00 a.m. and 4:00 p.m. from her office at the court. Between 4:00 p.m. and 6:00 p.m. (when judicial commissioners start their shifts), Foster is occasionally called upon to issue warrants from her home. She stated Ostermann and another officer (possibly, Tim Miller) came to her home on a late Friday afternoon before the commissioners came on duty to obtain the warrant for Defendant. She remembers issuing it on her front porch, she put them under oath and they left. When Defendant's relative called asking about the warrant, Foster did not find anything in the computer system and she responded with the November 2007 letter. When Defendant further inquired of Foster in March 2008, she made a concerted effort to determine why there could be a hold on Defendant. This is

6

when she discovered there was a warrant on him being held by the Marshall County Sheriff's Department.

Foster explained when she issued warrants from her home, they were not assigned a number or entered into the computer until the warrant is returned. When a warrant is issued from her office, the warrant is issued with a number and entered into the system at the same time. She verified her signature on both the warrant and the affidavit of complaint. In June 2009, Aycock questioned Foster about the warrant and she did not remember anything specific about its issuance.

Defendant challenges Foster's credibility based on the fact she failed to mention specifics about the warrant's issuance in her March 2008 letter. He also cites as discrediting the fact Foster told Aycock in June 2009, she did not recall any particulars about the arrest warrant despite her claim to have remembered issuing the warrant back in March 2008. Neither of these claims demonstrate Foster is untrustworthy or lacking in credibility. Foster explained why she did not include particulars surrounding the arrest warrant's issuance in the March 2008 letter as she "didn't think it was needed" (Transcript pp. 11-12). The fact she may not have remembered issuing Defendant's warrant when questioned about it by Aycock is not damaging to her credibility. The magistrate noted and this Court agrees, "Ms. Foster's memory about this warrant is not particularly good, but the undersigned finds no dishonesty or subterfuge on the part of Ms. Foster" (R & R p. 10). Foster signs many warrants in a week and multiple ones from her home, her failure to recall the specifics of a particular warrant is understandable. Her explanation for why the warrant was not recorded is credible and corroborated by Ostermann's testimony. The Court finds Foster's testimony on the issuance of the June 15, 2007, warrant to be credible and further proof a warrant was issued prior to Defendant's arrest.

7

## 2. Credibility of Ostermann's Testimony

Defendant contends Ostermann's testimony should not be found credible based on inconsistencies between his testimony at the hearing and Lane's testimony from the preliminary hearing. Ostermann testified at the hearing that on Friday, June 15, 2007, Lane instructed him to obtain an arrest warrant in Marshall County, where the controlled sale had occurred. "It was already after 4:00" so Ostermann called Foster and "asked if [he] could come by to get a warrant signed" (Transcript pp. 33-34). Ostermann also stated he and Lane were in the office at about 4:00 p.m. when Lane told Ostermann to get the warrant. At the preliminary hearing on February 28, 2008, Lane testified he had set up surveillance of Defendant's house and this was "around 3:30, between 3:30 and 4:00 in the afternoon, uh as we had a felony warrant for his arrest" (Prelim. Hearing Trans**.,** Court File No. 45-1, Ex. B, p. 4). Defendant claims based on Lane's prior testimony, the warrant would have been issued before 4:00 p.m. and Ostermann would have had to go to Foster's office, not her home, to obtain it.

Defendant also points to inconsistencies in Ostermann's testimony describing events after Defendant pulled into the parking lot with Lane's description of the events at the preliminary hearing. Ostermann testified there "would have been three or four" officers approaching Defendant's vehicle and he could hear them "telling [Defendant] to get his hands up" and to "show us your hands" (Transcript pp. 58-59). Lane testified in the preliminary hearing other than Agent Nikia Elliott, Osterman, and himself, there were no other persons that "participated in the stop" but there were "a number of other officers there" from Bedford County and Shelbyville Police Department (Prelim. Hearing Trans., Court File No. 45-1, Ex. B, p. 10).

The Court does not find Defendant has pointed to any material inconsistency to undermine

8

Ostermann's testimony establishing the arrest warrant was issued at Foster's home prior to Defendant's arrest. Ostermann was the one who obtained the warrant, not Lane, and the fact Lane indicated it was "around 3:30 or 4:00" when surveillance was established does not conflict with Ostermann's testimony Lane was conducting surveillance while Ostermann obtained the warrant. This is also corroborated by Foster's testimony she issued the warrant from her home sometime after 4:00 p.m. The fact Lane may describe the officers' actions differently is not inconsistent as Lane was not present when the officers approached Defendant's vehicle and saw the firearm. The magistrate analyzed the claimed inconsistencies and the Court finds the magistrate's credibility determination is supported by the record. Therefore, the Court holds Ostermann's testimony on the issuance of the June 15, 2007, warrant is credible and consistent with evidence in the record demonstrating a warrant was issued prior to Defendant's arrest.

**B.** **Applicability of the Plain View Doctrine**

Defendant appeals the magistrate judge's determination that, even if an arrest warrant had not been issued, his arrest was supported by probable cause when the officers saw the firearm in plain view. "At that point, when the officers saw the firearm in plain view, the officers had probable cause to arrest the defendant as a felon in possession of a firearm" (R & R, p. 11). Defendant contends the uniformed officer observing the firearm did not know Defendant was a convicted felon and would therefore not have probable cause to arrest Defendant based on the firearm in plain view.

**1.** **Plain View**

It is undisputed Defendant's firearm was on the front seat of the passenger side of his car and clearly visible from outside. "A motorist has no expectation of privacy shielding that portion of the interior of an automobile which can be viewed from outside the vehicle by either inquisitive passers

9

by or diligent police officers." *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (quoting *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir. 1996)). The seizure of the firearm was proper under the plain view doctrine. *See Payton v. New York*, 445 U.S. 573, 587 (1980) ("seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity"); *Campbell*, 549 F.3d at 373 ("Under the plain view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant").

The officers aiding Ostermann in Defendant's arrest were seizing the gun at the same time Ostermann, knowing Defendant was a convicted felon, was placing Defendant under arrest. Furthermore, "officers may temporarily seize weapons in plain view if they reasonably believe the weapons pose an immediate threat to the officer or public safety." *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003). At the point the firearm was seen, Defendant was still in the car and could have quickly grabbed the weapon, providing officers with another basis for seizing the weapon at the time they did. The Court concludes the magistrate correctly determined the plain view doctrine applied to the seizure of the firearm and the possession of a firearm by a known convicted felon provided probable cause for the arrest even in the absence of a valid arrest warrant.

### 2. Probable Cause

There was no evidence presented at the hearing to indicate whether or not the Bedford County and Shelbyville Police Department officers knew Defendant was a convicted felon. However, the undisputed testimony shows these officers were informed there was "an arrest warrant for the driver" for drug charges and he was suspected to be "armed and dangerous" (Transcript p.

10

58). More importantly, Ostermann knew Defendant was a prior convicted felon and was currently on parole (*id*. p. 42). The other officers approaching from the passenger side yelled out they could see a gun in the car within seconds of Defendant's arrival in the parking lot (Transcript pp. 41-42). Ostermann was approaching the vehicle from the driver's side at this time and as the other officer was reaching on the passenger side to recover the firearm, Ostermann was opening the driver's side and asking Defendant to step out (*id*. pp. 42-43). This all occurred before Lane arrived and turned on his flashing lights (*id*. p. 64). Ostermann then proceeded to tell Defendant he was under arrest and that there was a warrant for sale of Schedule II drugs (*id*. p. 43).

Based on the Court's determination an arrest warrant was issued prior to Defendant's arrest on June 15, 2007, the arrest was lawful. However, even if there was not an arrest warrant, the officers would have probable cause for an arrest based on the firearm in plain view combined with Ostermann's knowledge Defendant was a convicted felon. Ostermann, knowing Defendant had a firearm in his vehicle based on the statements of the other officers, had probable cause to arrest Defendant. Ostermann knew Defendant was a convicted felon and prior to arresting Defendant was informed by other officers there was a firearm in Defendant's vehicle. The Court concludes Defendant's arrest was supported by probable cause even in the absence of a valid warrant.

## IV.   CONCLUSION

After reviewing the testimony at the hearing and evidence presented, the Court finds Foster's and Ostermann's testimony to be credible and proof a valid arrest warrant was issued on June 15, 2007, prior to Defendant's arrest. In the alternative, even in the absence of an arrest warrant, Ostermann's knowledge of Defendant's status as a convicted felon combined with notice of the

firearm in his possession provides probable cause to arrest Defendant on the charge of a felon in possession of a firearm. Accordingly, the officers' seizure of the firearm was lawful under the plain view doctrine. Therefore, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 62). Defendant's motion to suppress and supplemental motions will be **DENIED** (Court File Nos. 44, 48, 58, 63).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

12